Hugh Ray LYONS, Jr., Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 285S55.

Supreme Court of Indiana.

April 20, 1987.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Marguerite M. Sweeney, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Hugh Ray Lyons, Jr., was convicted by jury of robbery, a class C felony, in the Marion Superior Court, Division Six, and was found to be an habitual offender. He was sentenced on September 21, 1984, to 35 years imprisonment. He now directly appeals, raising the following issues:

1. the victim's identification testimony;

2. allowing testimony regarding Appellant's out of court statement;

3. admission of State's Exhibits 10, 14, and 18 and expert testimony regarding those exhibits; and

4. sufficiency of the evidence.

The facts most favorable to the State are as follows. On February 10, 1984, at approximately 4:50 a.m., William Knelanger, the victim, was attacked while walking in downtown Indianapolis. Appellant hit the victim in the side and threw him to the ground. Appellant fell on top of the victim and demanded his money. Appellant took the victim's wallet from his hip pocket and then both stood up. Appellant then left.

The victim walked to the Greyhound bus station where he saw Appellant enter a white taxi cab. He reported the robbery to a bus station security officer and told the officer that Appellant left in a taxi. The officer notified the police.

The taxi took Appellant to a restaurant at 16th and Illinois streets. Appellant went into the restaurant, then returned and paid the taxi driver. The police arrived shortly thereafter. The taxi driver told the police that Appellant was walking toward Meridian Street.

Police stopped Appellant one block away. Shortly thereafter, the victim arrived in a police car. He identified Appellant while seated in a police car approximately 30 feet from where Appellant stood on the street. A police officer then placed Appellant under arrest and read Appellant his rights. Appellant stated he was really in trouble this time.

The next day, a police investigator attempted to interview Appellant. He advised Appellant of his rights but Appellant refused to sign a waiver form. Appellant then voluntarily stated that an old drunk white man had cut Appellant's jacket with a knife. Appellant said he had taken the knife away from the man and thrown it in the bushes at Illinois and Maryland Street near the Hyatt Regency. The investigator later searched the area but found no knife. Lab tests performed on Appellant's jacket revealed the sleeve was cut by a sharp instrument from the inside.

Prior to trial, Appellant filed motions alleging the arrest, search and show-up identification were conducted improperly. Following a hearing, the court ruled that the wallet and money obtained during the search of Appellant would be suppressed, as they were taken before Appellant was lawfully arrested. However, the show-up identification was found to have been conducted properly and was allowed.

I

Appellant asks us to review the trial court's denial of his Motion to Suppress Identification Evidence. He first claims the pre-trial identification was unnecessarily suggestive, resulting in the substantial likelihood of misidentification. Appellant argues secondly that the subsequent in-court identification was tainted by the unlawfully suggestive show-up identification procedure.

Unnecessary suggestiveness alone does not require exclusion of the evidence. *Hamlet v. State* (1986), Ind., 490 N.E.2d 715, 720. If, under the totality of the circumstances, the identification was reliable, it may be admitted even though the confrontation procedure may have been suggestive. *Id.* Five factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.*

The record here reveals that police detained Appellant at a location different from where the robbery occurred. Further, the victim identified Appellant from the back seat of a police squad car 30 feet away from where Appellant stood. Appellant was the only black male at the location. However, at the time of the robbery, the victim had an opportunity to view Appellant at close range under adequate lighting for two to three minutes. The victim was able to describe Appellant and his clothes. The show-up identification occurred within 15 to 30 minutes of the robbery, at which time the victim unequivocally identified Appellant as his assailant.

We have consistently found that the merit of having a witness observe a suspect while the offender's image is still fresh in that witness' mind can properly justify a show-up identification occurring shortly after the commission of an offense. *Hamlet,* 490 N.E.2d at 720; *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1053, 1055. Accordingly, the fact that Appellant may have been singled out as a suspect here is outweighed by the necessity of permitting the witness to view the suspect while the incident is still fresh in the victim's mind.

Appellant further contends the victim's in-court identification was impermissible. However, an in-court identification is permissible, in spite of a suspect pretrial identification, if an independent basis for the in-court statement exists. *Kusley v. State* (1982), Ind., 432 N.E.2d 1337, 1338. The independent basis for the in-court identification must not be a product of unnecessarily suggestive confrontation and must not lead to an irreparable likeli-

hood that the identification will be erroneous, denying due process. *Kusley*, 432 N.E.2d at 1338–1339. On review, the court will look to the totality of circumstances presented to determine if such an independent basis exists. *Kusley*, 432 N.E.2d at 1339. In *Peterson v. State* (1985), Ind., 485 N.E.2d 69, 70, there was a sufficient basis for an independent identification where the victim observed the defendant while he attacked her and as he fled, could give a detailed description of him and his clothes, and testified she would always remember the face. In the present case, we find a sufficient independent basis for identification exists. The victim observed Appellant during the robbery and as Appellant entered the taxi cab. The victim was able to give a description of Appellant and his clothes. Under all the facts and circumstances here it does not appear the trial court erred in permitting the testimony.

## II

Appellant next argues that the trial court erred in allowing testimony regarding an out of court statement made by Appellant. Appellant maintains that because he was not advised of his *Miranda* rights, his post-arrest statement that "this time he was really in trouble" was inadmissible. The officer testified that he did advise Appellant of his rights after the victim identified Appellant as his assailant.

█ The admissibility of a statement is controlled by determining, from the totality of the circumstances, whether or not it was made voluntarily. The same test determines whether a waiver of *Miranda* rights has occurred. *Smith v. State* (1986), Ind., 491 N.E.2d 193, 196. We review these questions on appeal as we do other sufficiency matters. We do not weigh the evidence or judge the witnesses' credibility, but rather, determine whether there is substantial probative evidence to support the trial court's finding. *Smith v. State*, 491 N.E.2d at 197.

█ The State is not required to prove it gave an advisement of rights to a suspect unless it seeks to introduce the product of custodial interrogation. *Smith v.*

*State* (1981), 275 Ind. 642, 648, 419 N.E.2d 743, 747. Here Appellant was in custodial detention when he made the statement. However, there was no questioning by the officers and no conduct on their part designed to bring forth a self-incriminating response by Appellant regarding the robbery. The record indicates that the Appellant's statement that he was in trouble this time was a voluntary statement, not prompted by any interrogatory posed by the police. Consequently, the statement was admissible.

## III

Appellant contends the trial court erred by allowing State's Exhibits Nos. 10, 14, and 18 into evidence pursuant to the business records exception to the hearsay rule. These Exhibits were admitted during the habitual offender portion of Appellant's trial and were part of a large number of exhibits admitted into evidence. The other exhibits accompanying 10, 14, and 18, were conviction and commitment records establishing the underlying felonies to prove Appellant was a habitual offender. These other exhibits were admitted into evidence without objection. Exhibits 10, 14, and 18 were sponsored by Officer Frank Wefler, who testified he was the keeper of the records and an identification technician for the police. Wefler testified Exhibit 10 was part of the records under his custody, consisting of an arrest report dated December 1, 1970, and bearing Appellant's name as the arrestee. Exhibit 14 contained a computer report dated December 1, 1970, stating that Appellant was arrested on a warrant for uttering a forged instrument, and a computer report dated January 7, 1971, stating that *a capias* was issued in relation to the aforementioned forgery. Exhibit 18 consisted of an arrest report dated April 6, 1975, stating that Appellant was arrested for robbery.

█ An official record, such as the arrest reports here, may be attested to by the person who has custody of those records, regardless of whether that person has first hand knowledge of the underlying transaction. *McBrady v. State* (1984), Ind.,

459 N.E.2d 719, 723. The witness is required to demonstrate only that the document is a part of records kept in the routine course of business and placed in the record by an authorized person who had personal knowledge of the underlying transaction. That was done by Officer Wefler here. It was not necessary, as Appellant contends, that the entering witness be able to specifically testify that he knew the person who entered the information on the documents had personal knowledge. Records contained in the usual course of business are presumed to have been placed there by those who have a duty to so record and have personal knowledge of the transaction represented by the entry, unless there is a showing to the contrary. Furthermore, these three exhibits were merely cumulative to the other evidence establishing the convictions and commitments of Appellant for prior unrelated felonies. Any error in their admission would therefore be harmless.

Appellant further complains that the trial court erred in permitting Officer Wefler to testify as a fingerprint expert. Wefler testified as to his qualifications, including education and experience in the analysis and identification of fingerprints. He testified he took Appellant's fingerprints and compared them with fingerprints accompanying the records put in evidence to show Appellant previously had been convicted and committed for prior unrelated felonies. His opinion was that the prints in those records were those of Appellant. Wefler's testimony, indicating he had substantial background education and experience in analyzing fingerprints, supported the trial court's decision to permit him to testify as an expert witness. Appellant gives neither argument nor legal support to his claim that the trial court erred in allowing Wefler to testify as an expert witness. He simply makes the statement that it was error. We, however, find no error in the admission of these exhibits, or in permitting Wefler's testimony as a fingerprint expert.

IV

Finally, Appellant claims there is insufficient evidence to support his conviction. The only argument he makes in this regard is directed to the credibility of the victim. However, on sufficiency questions we neither weigh the evidence nor determine the credibility of witnesses. If there is substantial evidence to support the jury's conclusion that Appellant was guilty beyond a reasonable doubt, we will not disturb that verdict. *Whitt v. State* (1986), Ind., 499 N.E.2d 748, 749; *Prine v. State* (1983), Ind., 457 N.E.2d 217, 219. When evidence is in conflict, the jury decides whom they will believe or disbelieve. *Cuppett v. State* (1983), Ind., 448 N.E.2d 298, 300. The victim here observed Appellant for several minutes, and saw him enter a taxicab. Appellant was traced through the taxicab driver to the point where he was apprehended by the police a very short time later. The victim indicated at the show-up identification and in the court room that he had no doubt Appellant was the person who robbed him. There was sufficient evidence to support the jury's verdict.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.